**FILED**
CLERK, U.S. DISTRICT COURT
10/19/2015
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DEPUTY



FILED & ENTERED
OCT 16 2015
CLERK U.S. BANKRUPTCY COURT
Central District of California
BY wesley    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Oma McConnell<br><br>Debtor(s). | CHAPTER 7<br>2:15-cv-08183-R<br>Case No.:  2:14-bk-14501-BB<br>Adv No:   2:14-ap-01420-BB<br><br>**REPORT AND RECOMMENDATION TO DISTRICT COURT FOR WITHDRAWAL OF REFERENCE AS TO DETERMINATION OF CRIMINAL CONTEMPT** |
| Bob  Atchison<br><br>Plaintiff(s),<br>    v.<br><br>Oma  McConnell<br><br>Defendant(s). | Date:         October 8, 2015<br>Time:        10:00 AM<br>Courtroom: 1475 |

    Because criminal contempt matters under 18 U.S.C. § 401(3) and Rule 42 of the Federal Rules of Criminal Procedure must be tried by the District Court, rather than the Bankruptcy Court, see In re Dyer, 322 F.3d 1178 (9th Cir. 2003), and because this Court believes that the facts of this case warrant consideration of prosecution for criminal

contempt, the Court hereby recommends that the District Court *sua sponte* withdraw the reference with respect to criminal contempt matters in the above adversary proceeding pursuant to 28 U.S.C. § 157(d) for the limited purpose of considering criminal contempt proceedings against debtor Oma McConnell, aka Oma Hamou, aka Alexandra McConnell ("Debtor").

# I
# PROCEDURAL HISTORY

Debtor filed a voluntary chapter 7 petition commencing the above bankruptcy case (the "Case") on March 10, 2014.[1] On June 20, 2014, plaintiff Bob Atchison ("Plaintiff") commenced the above adversary proceeding (the "Action") by filing a complaint against Debtor (the "Complaint") [Docket No. 1[2]]. In the Complaint, Plaintiff sought, among other things:

1. a determination that his prepetition Texas state court judgment against Debtor for $13,859.99 (the "Texas Judgment") should be excepted from discharge under Bankruptcy Code sections 523(a)(2)(A);

2. a determination that Debtor had defamed Plaintiff and that his damages for defamation should be excepted from discharge under Bankruptcy Code section 523(a)(6);

3. a determination that Debtor should be barred from obtaining a discharge under Bankruptcy Code section 727(a)(4) based on false oaths that she made in her bankruptcy schedules;

---

[1] This is actually the third bankruptcy case filed by the Debtor within a four-year period. Her first bankruptcy case, no. 10-37839-VZ, filed July 10, 2010 – a chapter 13 case -- was dismissed at Debtor's request. The second case, no. 12-17945-ER, filed March 5, 2012, was initially dismissed based on Debtor's failure to file schedules in a timely manner, but was reinstated at Plaintiff's request, as he had obtained an order compelling Debtor to appear for a 2004 examination and wanted to proceed with that examination. Debtor opposed that request and the bankruptcy judge before whom the case was pending dismissed the bankruptcy to permit Plaintiff to pursue his state law remedies. At the time she filed the instant bankruptcy Case, Debtor requested and obtained permission to pay her filing fee in installments. She paid two of the three installments, but not the third, and the Court issued an order to show cause why the Case should not be dismissed. As they had already filed nondischargeability actions against her by that point, Plaintiff and another creditor of the estate took the extraordinary step of paying the remainder of the Debtor's filing fee so that the Case would not be dismissed.

[2] Unless otherwise noted, docket numbers refer to items on the docket in adversary proceeding no. 2:14-ap-01420-BB.

    4. a determination that Debtor is a vexatious litigant; and

    5. a permanent injunction barring Debtor and anyone acting on her behalf from posting false and defamatory matter about him on the internet and requiring Debtor to remove any such material from any website over which she has control.

Debtor failed to file a timely response to the Complaint and, on August 1, 2014, the Clerk entered her default in the Action. [Docket No. 6.] Debtor then moved repeatedly, but ultimately unsuccessfully, to have her default set aside. See <u>Order Denying Motion for Relief from Default and Setting Dates</u>, Docket No. 37, entered December 29, 2014.

Plaintiff moved for entry of a default judgment in the Action on March 10, 2015 [Docket No. 40]. In its order entered April 13, 2015 (the "April Order") [Docket No. 49], the Court, among other things:

    1. granted judgment for Plaintiff declaring the Texas Judgment nondischargeable under section 523(a)(2)(A);

    2. granted judgment for Plaintiff for defamation under section 523(a)(6) and awarded nominal damages of $100;

    3. entered a permanent injunction restraining and prohibiting Debtor from posting, publishing or disseminating online or in any other manner under her own name or any alias or "handles" any comments concerning Plaintiff asserting that he:

        a. Has planned, committed, or participated in any crime;

        b. Is or has been involved in any criminal conspiracy;

        c. Is or has been under investigation by any federal, state, or local law enforcement agency;

        d. Has lied to or submitted forged documents to any judicial or investigative agency;

        e. Has committed perjury or submitted forged documents to obtain orders

|     |                                                                                         |
| --- | --------------------------------------------------------------------------------------- |
|     | or judgments against Defendant Oma McConnell, also known as Oma Hamou;                  |

    f. Is or has been the target of any anticipated arrest or criminal prosecution;

    g. Has solicited donations for a Russian museum and pocketed the proceeds;

    h. Has defied the orders or reprimands of any court;

    i. Has been the object of any final protective or restraining order concerning Defendant Oma McConnell, including but not limited to any alias used by Defendant Oma McConnell;

    j. Has removed any objects or materials from any museum or public or private institution without permission;

    k. Is held in disrepute by officials or employees of any government, organization, or institution;

    l. Is a sociopath or has any other psychological condition;

    m. Is considered mentally unstable, a criminal, liar, con man and troublemaker by the Russian government who will be denied entry into Russia as a result;

    n. Is considered mentally unstable, a criminal, liar, con man and troublemaker by the Orthodox Church of Russia who will have nothing to do with Plaintiff Bob Atchison as a result; or,

    o. Has threatened to or taken action to harm, stalk, menace, cheat or defraud Defendant Oma McConnell either himself or through any third party.

4. ordered Debtor to take down, remove and make unavailable online any posting or published or disseminated comment concerning Plaintiff Bob Atchison over which she has control or the ability to remove such matter

asserting any of the matters set forth above in paragraphs 3(a) through (o):

5. denied Plaintiff's request that Debtor's discharge be barred under section 727(a)(4); and

6. set a schedule for further briefing and a hearing on Plaintiff's request that Debtor be declared a vexatious litigant.

<u>April Order</u>, Docket No. 49.

Thereafter, the Court entered (1) an order granting Plaintiff's request that Debtor be declared a vexatious litigant [<u>Order on Motion for Determination of Vexatious Litigant Status of Debtor Oma McConnell, etc</u> (the "Vexatious Litigant Order") Docket No. 76, entered May 18, 2015[3]] and (2) a judgment in the Action that permanently enjoined the same conduct enjoined by the April Order. <u>Judgment by Default Against Defendant Oma McConnell</u>, Docket No. 75, entered May 18, 2015.

## II
## CONTEMPT PROCEEDINGS

On May 21, 2015, Plaintiff moved for entry of an order to show cause why Debtor should not be held in contempt for violating the April Order by failing to remove defamatory matter that she had posted on the internet. See <u>Notice of Motion and Motion for Order to Show Cause Why Debtor Oma McConnell Should not be Held in Contempt for Violation of Court Order of April 13, 2015</u> (the "First Contempt Motion"), Docket No. 81. The Court conducted a hearing on the First Contempt Motion on June 16, 2015, and, following that hearing, issued its June 23, 2015 "Order on Motion for OSC Why Debtor Oma McConnell Should Not be Held in Contempt of Court for Violation of Court Order of April 13, 2015 (the "First Contempt Order"). The Court found at the hearing on the First Contempt Motion that Debtor did not promptly comply with the April Order by removing all defamatory matter described in the April Order and that,

---

[3] The findings of fact set forth in Exhibit A to the Vexatious Litigant Order describe in detail the basis for this Court's conclusion that Debtor is a vexatious litigant.

1 as a result, Plaintiff had been compelled to bring the motion to obtain compliance with
2 the April Order.  Accordingly, the Court held Debtor in contempt and ordered her to pay
3 the attorneys' fees and costs that Plaintiff had incurred in bringing the First Contempt
4 Motion ($3,780).[4]  Defendant did not pay any portion of these amounts.[5]

On July 3, 2015, Plaintiff brought a second motion for an order to show cause why Debtor should not be held in contempt for further violations of the April Order (the "Second Contempt Motion").  [Docket No. 112.]  **This is the motion that eventually led to the issuance of this Report and Recommendation.**

In the Second Contempt Motion, Plaintiff asserted that Debtor had violated the April Order by failing to remove defamatory material from websites over which she had control and by continuing to post defamatory matter under assumed names. The Court conducted a hearing on the Second Contempt Motion on July 28, 2015 at 2:00 p.m.  At that hearing, the Court found that there was sufficient cause to believe that Debtor was continuing to violate the April Order and issued its July 28, 2015 "Order to Show Cause Why Oma McConnell Should Not be Held in Contempt for Further Violations of this Court's April 13, 2015 Order" (the "OSC") [Docket No. 117].

The OSC directed Debtor to appear on October 8, 2015 at 10:00 a.m. for an evidentiary hearing at which time the Court would determine whether she should be held in contempt or further sanctioned for having violated the April Order in the manner alleged in the Second Contempt Motion. The OSC also directed the clerk to issue and deliver to Debtor two blank subpoenas (the "Subpoenas") that Debtor had requested to enable her to serve discovery requests on AOL and Google.  According to Debtor's July 20, 2015 Letter Memorandum, Docket No.114, Debtor wanted these subpoenas in order to obtain proof that she was not responsible for various defamatory postings

---

[4] By the time of the hearing on the First Contempt Motion, however, Plaintiff was only able to locate one posting that Debtor had not removed.  Debtor claimed at that hearing that she was unable to delete the defamatory material from her Google Plus profile.  Judge Bluebond required Debtor to provide login information for that profile and successfully removed the defamatory material during the course of the hearing.
[5] See Declaration of Bob Atchison, Docket No. 112, p. 13, at lines 26-27, & p. 15, line 23.

-6-

identified by Plaintiff and information concerning a particular May 15, 2015 email sent either to or from one of her email addresses.

Paragraph 5 of the OSC directed Debtor to file and serve not later than September 24, 2015 any documents that she obtained in response to the Subpoenas, together with one or more declarations that provide a foundation for the admission of such documents into evidence, and any other evidence that she wished to present in response to the OSC. The OSC expressly advised Debtor that, if the Court found that she had continued to violate the April Order, it might (1) hold her in civil contempt and direct that she be incarcerated until she complies with the April Order; (2) issue a report and recommendation to the District Court that it withdraw the reference, hold her in criminal contempt and direct that she be incarcerated for a period of not less than 90 days; and/or (3) impose additional monetary sanctions on Debtor to compensate Planitiff for costs attributable to Debtor's violations of the April Order. See OSC, Docket No. 117, p. 2, at lines 7 through 15 & lines 22-25.

### III
### REQUESTS FOR CONTINUANCE

Debtor did not file any evidence or other opposition or response to the OSC. Instead, Debtor filed a series of unsupported motions requesting a continuance of the October 8, 2015 hearing on the OSC (the "October 8 Hearing"). The first such motion was filed on September 9, 2015 [Docket No. 119], was one paragraph in length, was signed by the Debtor and read as follows:

> I have spent an enormous amount of time as a patient at several hospitals related to my head. I will endure an operation to remove the object. I have been very ill, I lack any strength and am in constant pain. I am currently under the care of several [obliterated word] physicians related to my illness as such I am not prepared to represent myself at the October 8, 2015 hearing and respectfully requests a 30 day continuance. I can and would be able to provide this Court with records of my illness and pending surgery under the laws governing both the State of California and the United States of America that the information I have provided contained within this Declaration is true.

On September 11, 2015, Debtor filed her "Amended Declaration of Oma

McConnell in Support of Request for a Continuance on 10/8/2015 Hearing." [Docket No. 120.]  That document, signed by the Debtor, read as follows:

> I, OMA McCONNELL, under the penalty of perjury under the laws governing both the State of California and the United States of America that the forgoing is true and correct.
>
> 1. I have a rare and large tumor growing inside of my head.
> 2. I have been undergoing scores of testing under the care and supervision of several licensed physicians.
> 3. I have been told this tumor will kill me if it is not removed.
> 4. I have been told the removal of this tumor will increase my chances of survival.
> 5. I have been a patient in more than one hospital.
> 6. It is anticipated that in the coming days I will undergo surgery to remove the tumor.
> 7. Due to my health crisis I have been unable to concentrate on my bankruptcy case and or any other legal matter and or private matter in my life.
> 8. I request a continuance on the court hearing scheduled on 10/8/2015 due to my illness (es) has greatly impeded my ability to properly attend to any matter related to this court hearing.
> 9. I lack the strength which is required to focus on this adversary proceedings.
> 10. It has been difficult to maintain sanity enough to not break down in tears every second of these overwhelming and seemingly insurmountable tasks ahead of me.

On September 16, 2015, the Court entered its "Order Denying Debtor's Request for a Continuance of October 8, 2015 Order to Show Cause Hearing." [Docket No. 121.]  In that order, the Court explained that Debtor had not provided any corroborating evidence to support the factual contentions made in the declaration and that the Debtor's need to attend to a medical condition does not constitute cause to permit her to continue to violate the April Order.

On September 18, 2015, Debtor moved for reconsideration of her request for a continuance.  See Reconsideration for a Continuance, Docket No. 123.  Although this document is 14 pages in length, includes numerous excerpts/printouts that the memorandum describes as web postings, see Docket No. 123, at page 4, lines 15-21, and contains legal argument, it does not contain any evidence under penalty of perjury concerning Debtor's medical condition and does not demonstrate that Debtor would be unable to appear on October 8, 2015.  Accordingly, on September 24, 2015, the Court

again denied Debtor's request for a continuance, this time "with prejudice."  See <u>Order Denying Debtor's Request for Reconsideration of Order Denying Continuance of the October 8, 2015 Order to Show Cause Hearing</u>, Docket No. 125.

On October 6, 2015, Debtor personally delivered to the Court for filing docket nos. 128 and 129, namely, a Motion for Leave to Appeal the Court's orders denying her requests for continuance and a Notice of Appeal and Statement of Election to have her appeal heard by the Bankruptcy Appellate Panel.  At that time, she advised Court staff that she would not be appearing at the October 8 Hearing.  The Court referred Debtor's filings to the Bankruptcy Appellate Panel for further handling.

Debtor failed to appear at the hearing on the OSC on October 8, 2015 at 10:00 a.m.[6]  Based on the foregoing, the Court found that Debtor failed to establish that her medical condition had prevented her from either filing a written response to the OSC in a timely manner or from appearing at the October 8 Hearing.[7]  Debtor demonstrated repeatedly throughout the period from July 28, 2015 through October 8, 2015 that she had the ability to prepare and file papers with the Court and to appear in Court when she chose to do so.

Accordingly, the Court proceeded with its October 8, 2015 Hearing notwithstanding Debtor's absence.  Based on the evidence adduced at that hearing, the Court makes the following findings of fact and conclusions of law.

## IV

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.  As of July 2, 2015, the following web pages were active and contained material of the kind that Debtor was restrained from posting, publishing or decimating

---

[6] She did, however, telephone Judge Bluebond's law clerk *from inside the courthouse* on the afternoon of October 8, 2015 to ask what had happened at the 10:00 a.m. hearing that day. She was observed making this telephone call by a member of Judge Bluebond's staff who recognized her from her multiple prior appearances in court.

[7] The Court also took judicial notice during the course of the October 8, 2015 hearing that Debtor had publically announced that her surgery had been completed before October 8: a Twitter user named Oma Hamou, whose profile picture is that of the Debtor, tweeted on October 5, 2015 that her surgery had been a success.

-9-

("Defamatory Material") that she was required by the April Order to take down, remove or make unavailable if she had the ability or the control necessary to do so:

    a. http://bobatchisonlies.blogspot.com/ [see Declaration of Barry R. Wegman to Second Contempt Motion, Docket No. 112 (the "Wegman Declaration"), p. 17, par. 7 & Exhibit F thereto];

    b. http://alexanderpalaceobsession.blogspot.com/ [see Wegman Declaration, p. 17, par. 8 & Exhibit G thereto];

    c. http://bobatchisonsalexanderpalace.blogspot.com/2006/11/reality-of-bob-atchison-and-pallasart.html [see Wegman Declaration, p. 17, par. 9 & Exhibit H thereto]; and

    d. http://theaustinwineguy-robmoshein.blogspot.com/ [see Wegman Declaration, p. 17, par. 10 & Exhibit I thereto].

2. As of July 3, 2015, the following web pages were active and contained copies of pleadings that Debtor has filed in the Action that include Defamatory Material, namely, Docket Nos. 17 and 19 and the exhibits to Docket No. 21:

    a. http://www.yumpu.com/user/tsarskoye [see Wegman Declaration, p. 18, par. 14]; and

    b. http://www.scribd.com/doc/246144570/Bob-Atchison-of-the-Alexander-Palace-Time-Machine-Opposition [see Wegman Declaration, p. 18, par. 14].

3. The Court visited each of the above websites during the course of the October 8 Hearing and during the preparation of this Report and Recommendation and confirmed that each of these webpages was still active and accessible on both of these occasions.

4. Debtor either posted the Defamatory Material on the websites listed in findings 1 and 2 above (the "Websites") or has the ability to direct the removal of the Defamatory Material from each of the Websites as evidenced by the following:

     a. An individual identified as "Justin Edwards" posted the Defamatory Material on the website identified in finding 1(a). Justin Edwards is listed as the Tech for the websites OmaHamou.com and Sarskaia.org, which are websites registered to Debtor under Debtor's name, with the same mailing address as Debtor and an email address at Enigma Films, which is the name of the company that Debtor operates. Declaration of Barry E. Wegman, Docket No. 127 (the "Second Wegman Declaration"), Exhibits L & M.

     b. An individual using the screenname, "Sandman," posted the Defamatory Material on the websites identified in findings 1(b) and 1(d). However, these postings are replete with statements by Debtor in the first person. And it is inconceivable that anyone other than the Debtor or someone acting at her direction would devote significant time or energy to the posting of such material. Either Sandman is the Debtor, or Sandman is posting this material on the Debtor's behalf. It cannot be that Sandman is doing so without Debtor's cooperation and assistance. Therefore, it is within her control to stop making statements to Sandman for him to post. Further, at least one of the posts on the website identified in finding 1(b) reflects an edit by Oma Hamou on April 27, 2014 with a notation that she made a correction to the post. See Exhibit K, p. 0128 (the last page). If she has the ability to edit posts on this site, she has the ability to delete the Defamatory Material entirely. It is worthy of note too that, although the Court gave Debtor a subpoena to use to obtain information to support her contention that she does not use or control the screenname Sandman, she has failed to offer any such evidence.

     c. An individual using the screenname, "Pushkinrocks" posted the Defamatory Material on the website identified in finding 1(c). See Exhibit H, p. 0087 (the second to last page). However, these postings are replete with statements by Debtor in the first person. And it is inconceivable that anyone other than the Debtor or someone acting at her direction would devote significant

-11-

time or energy to the posting of such material. Either Pushkinrocks is the Debtor, or Pushkinrocks is posting this material on the Debtor's behalf.  Therefore, it is within her control to stop making statements to Pushkinrocks and to direct him to delete statements that have already been posted concerning this matter.  It is worthy of note too that, although the Court gave Debtor a subpoena to use to obtain information to support her contention that she does not use or control the screenname Pushkinrocks, she has failed to offer any such evidence.

  d.  An individual using the screenname "Tsarskoye" posted the pleadings containing Defamatory Material on the website identified in finding 2(a).  In an attachment to a letter that she sent to counsel for Plaintiff, Exhibit C to the Second Contempt Motion, at page 0031, Debtor identifies Tsarskoye as her user name.

  e.  The website identified in finding 2(b) above states that the material on that page was "Published by Oma Hamou."

  f.  Although there is a privilege to make defamatory statements in court papers and testimony under California Civil Code § 47, that privilege does not extend to posting such papers outside the courthouse. The materials posted on the website identified in findings 2(a) and 2(b) above do not fall within this privilege.

5.  By failing and refusing to take the steps necessary to cause the Defamatory Material to be removed from the websites identified in findings 1 and 2 above, Debtor has willfully violated the terms of this Court's April Order.

6.  Plaintiff has been required to incur attorneys' fees and costs of not less than $4,297.50 and $60, respectively, in prosecuting the Second Contempt Motion to compel compliance with the April Order. These costs are reasonable and appropriate for the services rendered.  Additional monetary sanctions should be imposed on Debtor in these amounts to compensate Plaintiff for the cost of bringing and prosecuting the

-12-

Second Contempt Motion.  A separate order to this effect will be entered concurrently herewith.

## V

## RECOMMENDATION

Debtor is well aware of this Court's April Order and what it requires. She has acknowledged as much in open court on not less than two occasions. She has been told repeatedly that she must stop making defamatory statements about Plaintiff and that she must take all steps within her control to delete any and all defamatory material that she has already posted on the internet about Plaintiff. She has not done this, notwithstanding repeated instructions to do so. Instead, Debtor has devoted her energies to efforts to avoid having to appear in response to the Second Contempt Motion.

This Court has attempted to obtain compliance with the April Order by imposing monetary sanctions for civil contempt, but this has not had the intended effect. And although the Court could again hold Debtor in civil contempt and direct that she be incarcerated until the offending posts have been removed, based on its past experience with the Debtor, this Court believes that, once Debtor was released from custody, she would simply return to posting defamatory material again. Debtor needs to be shown that compliance with Court orders that have not been stayed or reversed on appeal is not optional. Unfortunately, this Court is of the opinion that, nothing short of a finding of criminal contempt and a limited period of incarceration is likely to communicate this message effectively to the Debtor. And this Court lacks the authority to hold a party in criminal contempt and order incarceration for punitive purposes.

Pursuant to 28 U.S.C. § 157(a), the District Court has issued a standing order generally referring all cases under title 11 and all proceedings arising under, arising in or related to cases under title 11 to the bankruptcy judges for the Central District of California.  However, the District Court is authorized by 28 U.S.C. § 157(d) to withdraw, in whole or in part, the reference as to any case or controversy "for cause shown."  See

Fed. R. Bankr. P. 5011(a) and 9033. This Court respectfully submits that the foregoing facts, coupled with the Bankruptcy Court's lack of authority to hear and determine criminal contempt matters, constitute sufficient cause within the meaning of this section for the District Court to withdraw the reference to the extent set forth below. Accordingly, the Court recommends:

    1. that the District Court *sua sponte* withdraw, in part, the reference pursuant to 28 U.S.C. § 157(d) for the limited purpose of considering criminal contempt proceedings against debtor Oma McConnell, aka Oma Hamou, aka Alexandra McConnell; and

    2. that the District Court find Debtor guilty of criminal contempt and sentence her to be incarcerated for a period of 90 days or such other period as the District Court may deem appropriate.

###

Date: October 16, 2015

Sheri Bluebond
United States Bankruptcy Judge